IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:11-CR-00082-7** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **PATRICK DEWAYNE SMITH** | ) | |

**MEMORANDUM and ORDER**

Before the court is defendant Patrick Dewayne Smith's *pro se* Motion for a Reduction in Sentence Pursuant to the First Step Act and the Changes to the Compassionate Release Statute and 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 2025.) Following the filing of this motion, the court appointed the Federal Public Defender's Office to file a supplemental motion or a notice stating that the defendant does not intend to proceed further on the request. (Doc. No. 2027.) The Federal Public Defender's Office filed a Supplement to Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 2032.) The United States opposes the motion. (Doc. No. 2039.) Constrained by the Sixth Circuit's decision in *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), issued after briefing had concluded, the court has no choice but to deny the motion, as explained herein.

**I. BACKGROUND**

On March 16, 2011, Smith and nineteen other defendants were charged in a federal criminal Complaint alleging that they were engaged in a drug conspiracy. (Doc. No. 3.) The next day, Smith was arrested and taken into federal custody. (Doc. Nos. 62, 191.) On April 20, 2011, a federal grand jury returned an Indictment charging Smith and nineteen others with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 280 grams or more

of cocaine base, or crack, 100 kilograms or more of marijuana, and MDMA (Count One). (Doc. No. 253.)

Smith initially agreed to cooperate with the Government's investigation. He entered into a Plea Agreement, providing that he would plead guilty to the drug conspiracy charged in Count One of the Indictment. In the Plea Agreement, the parties agreed that Smith was a Career Offender under the sentencing guidelines, due to multiple prior felony drug trafficking convictions. (Doc. No. 496, at 16.) The Government agreed that, if Smith ultimately provided substantial assistance and otherwise complied with the terms of the Plea Agreement, the Government would file a substantial assistance motion under U.S.S.G. § 5K1.1. (*Id.* at 18.) The Plea Agreement provided for a binding sentencing range of 12 to 14 years (144–68 months) in the event that the Government filed such a motion. (*Id.* at 19.)

This was significant, because the applicable drug statute includes a three-strikes provision, 21 U.S.C. § 841(b)(1)(A), triggered only if the prosecutor chooses to file a notice of prior "felony drug offense" convictions before the defendant pleads guilty or is tried, in accordance with 21 U.S.C. § 851. At the time, "felony drug offense" was defined so broadly that it included "*any* criminal conduct relating to narcotics, including simple possession, which a state has proscribed as a felony," *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) (citation omitted), including crimes committed by juveniles but prosecuted in adult court, *United States v. Graham*, 622 F.3d 445, 461 (6th Cir. 2010). If the prosecutor chose to file an § 851 notice of two prior predicate offenses, and if a defendant was convicted of engaging in a conspiracy involving 280 grams of crack, the statutory mandatory penalty was life in prison. 21 U.S.C. § 841(b)(1)(A) (2011). The potential application of this statute should have been clear to both the defendant and his attorney, in light of Smith's prior drug convictions and the evidence supporting the charges in this case.

However, less than a month after entering into the Plea Agreement, the defendant had a change of heart. He wrote a letter to the court, explaining his belief that his appointed counsel had misled him and pressured him into pleading guilty and that he should not be considered a "career offender," based on his own understanding of his prior convictions. (Doc. No. 550.) The court conducted a status conference on December 15, 2011. Despite attempts to make it clear to the defendant that, if he was convicted on the drug conspiracy and the Government filed a § 851 notice, he would face a mandatory life sentence, the defendant persisted in his desire to withdraw his guilty plea. At a subsequent hearing, he testified under oath that he was not guilty of the charged conspiracy. The Assistant United States Attorney then announced that it was withdrawing from the Plea Agreement and would file the § 851 enhancements and proceed to trial. (Doc. No. 1615, at 53, 55.) The court informed the defendant that the enhancements would mean that, if he was convicted, he would face a mandatory life sentence. (*Id.* at 55.) The defendant confirmed that he understood, and the court granted his motion to withdraw his guilty plea. (*Id.* at 55–56.)

The Government, as warned, filed notices under 21 U.S.C. § 851 that Smith had four prior convictions for felony drug offenses and that, if convicted of the drug conspiracy charge, Smith faced a mandatory sentence of life imprisonment. (Doc. Nos. 672, 1110.) *See* 21 U.S.C. § 841(b)(1)(A) (2010) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release."). In addition, the grand jury returned a Second Superseding Indictment additionally charging Smith and others with conspiracy to commit money laundering. (Doc. No. 910.)

Smith proceeded to trial, along with two of his co-conspirators, and was found guilty on both conspiracy to possess controlled substances with intent to distribute and conspiracy to commit money laundering. Due to the § 851 enhancements, Smith was sentenced to life on Count One

(drug conspiracy) and 240 months on Count Two (money laundering), to run concurrently with the life sentence on Count One. (Doc. No. 1504.) The Sixth Circuit affirmed the conviction and sentence. (Doc. No. 1711.)

On November 27, 2020, Smith submitted a letter to the Warden of USP McCreary, requesting consideration for compassionate release based upon changes to the drug sentencing laws, his rehabilitation, and the impact of the COVID-19 pandemic. (Doc. No. 2025-1, at 23.) The Warden denied Smith's request.

On January 1, 2021, Smith submitted his *pro se* motion requesting that the court reduce his sentence to time served. (Doc. No. 2025.) On January 22, 2021, the Federal Public Defender's Office filed a supplemental brief on Smith's behalf, arguing that the court should find "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c)(1). The defendant argues that extraordinary and compelling reasons arise, in particular, from the fact that changes in 21 U.S.C. § 851 would "make a drastic difference" in his case (Doc. No. 2042, at 7), as it would reduce his sentence from life without parole to, at most, twenty-five years if he were sentenced today, and that this factor should be considered in combination with the other circumstances presented in this case, including (1) the fact that Smith had a largely "unremarkable" criminal history involving low-level, non-violent drug offenses (*id.* at 1); (2) the crime of conviction was "unremarkable," did not involve violence or firearms, and his participation in the conspiracy was limited to six discrete actions over the course of ten months (*id.* at 2–3; (3) the § 851 enhancement was filed due to Smith's decision to stand trial and to remain silent, instead of pleading guilty (Doc. No. 2032, at 21); (4) his decision to withdraw his plea in the first place was likely due to his then-counsel's "subpar" handling of his client's apparent misunderstanding of the risk he took by going to trial and the strength of the evidence against him (*id.* at 18); and (4)

Smith's post-sentencing rehabilitation has been exemplary, as he has done "virtually everything in his power to rehabilitate himself" (Doc. No. 2042, at 9 (quoting *United States v. Marks*, 455 F. Supp. 3d 17, 36 (W.D.N.Y. 2020))). The supplemental brief contends that Smith's sentence should be reduced to 151 months. (Doc. No. 2032, at 22–24.)

The Government concedes, in its Response, that the 2018 First Step Act granted the district court the discretion to consider the defendant's motion and to determine what constitute extraordinary and compelling reasons for a reduction in sentence under § 3582(c)(1)(A). (Doc. No. 2039, at 13.) It argues, however, that the non-retroactive sentencing changes effected by the First Step Act do not constitute an extraordinary and compelling reason for a sentence reduction, whether considered alone or in conjunction with the other factors cited by the defendant. (*Id.* at 14.)

## II. THE LEGAL LANDSCAPE

The First Step Act of 2018 wrought several changes relevant here. First, it lessened the penalty under the so-called "three strikes" rule. Instead of facing a mandatory life sentence, as Smith received, drug traffickers with two or more serious drug felonies or violent felonies, if sentenced under the First Step Act, now face a mandatory minimum 25-year sentence. 21 U.S.C. § 841(b)(1)(A) (2018).

And second, it altered defendants' ability to seek a reduction in an already-final sentence through the mechanism known as "compassionate release." "Traditionally, only the Bureau of Prisons could file compassionate-release motions, but the First Step Act of 2018 now permits defendants to file them too." *United States v. Ruffin*, 978 F.3d 1000, 1001 (6th Cir. 2020); *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. Jan. 6, 2021) ("The passage of the First Step Act in 2018 expanded access to compassionate release by allowing inmates to bring compassionate-release motions on their own behalf.").

The statute governing compassionate release, 18 U.S.C. § 3582(c)(1)(A), sets forth three requirements that must be met for a district court to grant compassionate release: (1) "the court initially must 'find[]' that 'extraordinary and compelling reasons warrant such a reduction,'" *Ruffin*, 978 F.3d at 1004 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); (2) "the court next must 'find[]' 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" *id.* at 1005 (quoting 18 U.S.C. § 3582(c)(1)(A)); and, if those two requirements are met, (3) "the court *may* grant a reduction after considering all relevant factors listed in 18 U.S.C. § 3553(a),'" *United States v. Tomes*, 990 F.3d 500, 502 (citing 18 U.S.C. § 3582(c)(1)(A)). "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

Regarding the second factor, "[t]he [Sentencing] Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). The Sixth Circuit has now confirmed, however, that U.S.S.G. § 1B1.13, which has not been updated since the passage of the First Step Act, governs consideration of compassionate release motions by the Bureau of Prisons, but it is not an "applicable policy statement" for compassionate-release motions brought directly by inmates. *Id.* The Sixth Circuit has recognized that, "[i]f the guideline remained applicable, district courts would be precluded from determining extraordinary and compelling reasons on their own initiative and would be bound by the reasons listed in the guideline." *Elias*, 984 F.3d at 519 (citing *Ruffin*, 978 F.3d at 1006). However, "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative," at the first step. *Id.* at 519–20 (citing *Jones*, 980 F.3d at 1111). The only apparent statutory limitation on that discretion is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary

and compelling reason." 28 U.S.C. § 994(t).

In addition, however, the Sixth Circuit has now made it clear that courts may not consider the non-retroactive amendments to drug sentencing laws, even in part, as supplying an "extraordinary and compelling reason" for a sentence reduction. *United States v. Jarvis*, 999 F.3d 442, 446 (6th Cir. June 3, 2021). But the court took a circuitous route to arrive at that conclusion.

First, in *United States v. Tomes*, 990 F.3d 500, 501 (6th Cir. Mar. 9, 2021), the defendant had pleaded guilty in 2018 to federal drug and firearm charges and had been sentenced to twenty years in prison. Just a few years later, he sought a reduction in his sentence by filing a motion for compassionate release under § 3582(c)(1)(A). He argued that "the presence of COVID-19 in prisons, coupled with his increased susceptibility to serious illness from the virus because of chronic asthma, constitutes an 'extraordinary and compelling reason' for release." *Tomes*, 990 F.3d at 501. He also asserted that "the law has changed since his sentencing, and he would receive a shorter sentence today than he received a few years ago." *Id.* The district court denied his motion, erroneously finding, first, that it was limited to the definition of "extraordinary and compelling reasons" for release contained in U.S.S.G. § 1B1.13 and that the defendant had not identified any "medical ailments that are so severe that they would justify release" under the guideline. *Tomes*, 990 F.3d at 502. In addition, the court found that the other reasons the defendant cited—"rehabilitation, strong family support, and apparently inequitable sentence"—were not extraordinary and compelling under § 1B1.13. The court nonetheless considered the § 3553(a) factors and found that, even if it had the discretion to reduce Tomes's sentence, these factors "did not favor release either." *Id.*

On appeal, the Sixth Circuit noted that the district court had erred in finding that U.S.S.G. § 1B1.13 constrained the determination of what constitute "extraordinary and compelling reasons"

for compassionate release but that reversal was not required, because the district court had also addressed the § 3553(a) factors and determined that relief was unwarranted. The Sixth Circuit expressly stated:

> But even if a district court wrongly constrains itself to § 1B1.13 to define extraordinary and compelling reasons for release, we can still affirm if the court uses § 3553(a) as an independent reason to deny relief. . . .
>
> . . . . Before a district court can grant a defendant's motion for compassionate release, it must find that the defendant satisfies all three of § 3582(c)(1)(A)'s prerequisites. So district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. And for that reason we have said repeatedly that we can affirm a court's denial of a defendant's compassionate release motion based on the court's consideration of the § 3553(a) factors alone.
>
> We do so here.

*Tomes*, 990 F.3d at 503–04 (internal citations and quotation marks omitted). The court also found no abuse of discretion in the court's denial of relief based on § 3553(a). *Id.* at 504.

Although that was apparently all the analysis necessary to affirm the district court's ruling, the Sixth Circuit made "[o]ne last point," addressing Tomes's claim that he should receive compassionate release because, if he were sentenced today, he would receive a lesser sentence under the same provision of § 841 that governed Smith's sentencing. *See id.* at 505 ("Tomes argues that his prior state convictions for dealing in cocaine and trafficking in a controlled substance do not qualify as 'serious drug felonies.' Thus, the mandatory floor no longer applies to him, and even if it did, it is shorter now than it was when the district court sentenced him."). The court rejected that argument on the basis that the amendment to § 841 upon which Tomes relied did not apply to any offender sentenced prior to the effective date of the First Step Act. *Id.* (citing First Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5221). Tomes had been sentenced six months prior to the effective date of the Act and was not entitled to retroactive application of the amendments. The court stated: "we will not render § 401(c) useless by using § 3582(c)(1)(A) as an end run

around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Id.*

In a subsequent Sixth Circuit opinion, issued just two months later, a defendant sought relief under 3582(c)(1)(A), arguing that the "disparity between his actual sentence and the sentence that he would receive after the First Step Act, along with his remarkable rehabilitation and the lengthy 115-year sentence he received because of exercising his right to a trial, together constitute an extraordinary and compelling reason to justify compassionate release." *United States v. Owens*, 996 F.3d 755, 759–60 (6th Cir. 2021). The district court reviewing his motion for compassionate release denied relief on the basis that "the disparity between the sentence that Owens received and the sentence that he would receive today because of the First Step Act's amendments . . . was not an 'extraordinary and compelling reason' to merit compassionate release." *Id.* at 758. The court held simply that, because the First Step Act amendments to the provisions under which Owens had been sentenced were not retroactive, it could not consider the First Step Act's sentencing changes as an "extraordinary and compelling reason" for relief. *Id.* The district court did not consider the defendant's evidence of rehabilitation or other cited reasons, nor did it consider the 18 U.S.C. § 3553(a) factors. On appeal, the Sixth Circuit held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." *Id.* at 760.

In reaching that conclusion, the court acknowledged *Tomes* but construed it as holding only that "the impact of a reduction in the applicable mandatory-minimum sentence in . . . the First Step Act . . . was [not] sufficient by itself to constitute an extraordinary and compelling reason for

compassionate release under § 3582(c)(1)(A)." *Id.*[1] The court in *Owens* determined that, although the holding in *Tomes* "bear[s] upon Owens's case, Owens's circumstances are factually distinguishable," as he pointed to other factors, including "the fact that his lengthy sentence resulted from exercising his right to a trial and to his rehabilitative efforts[,] as additional factors that considered together constitute an extraordinary and compelling reason meriting compassionate release." *Id.* at 760–61.[2] The district court had not considered these factors at all. The appellate court, therefore, remanded with instructions that the district court take all of these factors into consideration in deciding whether relief was warranted, without expressing any opinion as to the merits of these factors. *Id.* at 763–64.

As already foreshadowed, the saga did not end with *Owens*. Less than a month later, a different Sixth Circuit panel reversed course in *United States v. Jarvis*. There, too, the defendant sought compassionate release based on the disparity between the mandatory minimum sentence that applied when he was sentenced (twenty years) and the mandatory minimum sentence that would have applied to him under the First Step Act (five years). The defendant also "invoked the COVID-19 pandemic" and the fact that, if he had been sentenced following the passage of the First Step Act, he would have received a twenty-five-year sentence rather than the forty-year sentence he actually received. The district court denied the motion on the basis that the non-retroactive change to 18 U.S.C. § 924(c), under which Jarvis had been sentenced, could not, as a matter of

[1] *Tomes*, like the case now before this court, involved sentencing under 21 U.S.C. § 841(b)(1)(A), which was modified by § 401 of the First Step Act. *Owens* involved sentence "stacking" under 18 U.S.C. § 924(c), which was modified by § 403 of the First Step Act. This difference is not material to the definition of "extraordinary and compelling."

[2] The court also addressed another Sixth Circuit opinion issued the same day as *Tomes* but amended and reissued a few days after *Owens*, which held that the sentencing disparities created by the First Step Act, standing alone, could not constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A). *United States v. Wills*, 991 F.3d 720 (6th Cir. March 9, 2021), *amended and superseded*, 997 F.3d 685 (6th Cir. May 14, 2021)).

law, qualify as an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A).

On appeal, the defendant argued that, "even if the First Step Act's amendments do not amount to an extraordinary and compelling reason on their own, they meet the standard when combined with three other considerations: COVID-19, his high blood pressure, and his rehabilitative efforts." *Jarvis*, 999 F.3d at 444. He presumed that these three factors, in combination, did not qualify as "extraordinary and compelling" but that the district court erred in refusing to consider them in conjunction with the amendments to the First Step Act.

The Sixth Circuit unequivocally rejected this argument, relying primarily upon *Tomes*, holding that "the First Step Act's non-retroactive amendments, whether by themselves or together with other factors," cannot be treated "as 'extraordinary and compelling' explanations for a sentencing reduction." *Jarvis*, 999 F.3d at 445. Rather, "for those defendants who can show some other 'extraordinary and compelling' reason for a sentencing reduction . . . , they may ask the district court to consider sentencing law changes like [the First Step Act] in balancing the § 3553(a) factors." *Id.*

In reaching its conclusion that the non-retroactive sentencing amendments effected by the First Act could not be taken into consideration in the district court's analysis of "extraordinary and compelling reasons" for a sentence reduction, the court first rejected the defendant's argument that *Tomes*'s First Step Act discussion amounted to dicta. *Id.* at 444. And second, the court also acknowledged the holding in *Owens* as a "development" that had to be addressed, *Jarvis*, 999 F.3d at 445, particularly because the *Owens* panel read *Tomes*'s "extraordinary and compelling" discussion as dicta. The court in *Jarvis* disagreed:

> *Owens* . . . claims that *Tomes* held only that a defendant may not rely on a non-retroactive amendment alone when trying to establish extraordinary and compelling

> reasons. But that is inaccurate. The defendant in *Tomes* added his First Step Act arguments to his contention that his "rehabilitation, strong family support, and apparently inequitable sentence were extraordinary and compelling reasons for release." The defendant in *Tomes* in fact presented five reasons for granting relief. A faithful reading of *Tomes*, we respectfully submit, leads to just one conclusion: that it excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors.

*Jarvis*, 999 F.3d at 446 (quoting *Tomes*, 990 F.3d at 502) (other internal citations omitted). The *Jarvis* panel faulted the *Owens* panel for declining to "follow *Tomes*'s reasoning or holding that a non-retroactive First Step Act amendment fails to amount to an 'extraordinary and compelling' explanation for a sentencing reduction." *Jarvis*, 999 F.3d at 445. The *Jarvis* panel concluded that this was in error, because "*Tomes*, decided before *Owens*, 'remains controlling authority' that binds this panel." *Id.* (quoting *Salmi v. Sec'y of Health & Hum. Servs.*, 775 F.2d. 685, 689 (6th Cir. 1985)). "Forced to choose between conflicting precedents," the *Jarvis* panel chose *Tomes*. *Id.* at 445–46.

This court is admittedly perplexed by *Jarvis*'s treatment of *Tomes* and *Owens* but finds that it is bound both by the Sixth Circuit's interpretation of *Tomes* as conflicting with *Owens* and its conclusion that *Tomes*, as the earlier panel decision, is binding. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[A] published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court.").

## III. APPLICATION

Smith does not argue that his particular circumstances—the Plea Agreement, his ill-advised withdrawal of his guilty plea, his youth, his exemplary rehabilitation, his relatively minor criminal history and minor participation in the conspiracy—together could provide extraordinary and compelling reasons to accord him sentencing relief under § 3582(c)(1)(A). Nor could he. There is simply no precedent that would justify a conclusion that these factors, even considered in the

aggregate, warrant compassionate release.

And, as set forth above, under *Tomes* and *Jarvis*, the "non-retroactive First Step Act amendments" are excluded "from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors." Accordingly, the court finds that the defendant has not provided extraordinary and compelling reasons justifying compassionate release.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, Patrick Dewayne Smith's *pro se* Motion for a Reduction in Sentence Pursuant to the First Step Act and the Changes to the Compassionate Release Statute and 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 2025), as supplemented by appointed counsel (Doc. No. 2032) is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge