UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Case No. 3:11-CR-00082-7** |
| **v.** | ) | **JUDGE TRAUGER** |
| | ) | |
| **PATRICK DEWAYNE SMITH** | ) | |

**DEFENDANT'S MOTION FOR A SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)**

Patrick Smith respectfully moves the Court for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) in light of the new and binding policy statement that takes effect on November 1, 2023. Smith is eligible for relief under two grounds spelled out by that new policy statement: "unusually long sentence" under U.S.S.G. § 1B1.13(b)(6) and "other reasons" under § 1B1.13(b)(5).

Smith is serving a mandatory life sentence for his non-violent and non-extensive participation in a drug-trafficking conspiracy. He received that sentence for three reasons. First, at the time, the drug statute mandated a life sentence for certain repeat offenders if the prosecutor chose to trigger such a penalty. But today, that statute triggers a mandatory penalty of 15 or 25 years, not life. Second, at that time, the Department of Justice's charging policy obligated the prosecutor to trigger that mandatory life sentence. But today, the DOJ's policy would tell the prosecutor *not* to trigger that life sentence. Third, at that time, Smith's counsel handled Smith's doubts about his sentencing exposure poorly, which contributed to Smith deciding, utterly against his interest, to withdraw from a plea bargain for 12 to 14 years. Due to the statutory mandatory minimum, the DOJ's charging policy, and defense counsel's poor performance, Smith wound up with a life sentence that is, from today's perspective, clearly far too long.

Indeed, nothing about Smith's crime or criminal history is remarkable. Nothing remotely justifies the ultra-harsh sentence of life in prison. No other participant in the drug conspiracy—in which Smith was not a major player—even remains in prison today. Yet, absent relief, he alone will remain in prison for it until the day he dies. And that is so even though Smith, who has served more than 12.5 years in prison, has compiled a completely clean disciplinary record and has earned the support of prison employees who say he is a model prisoner.

In light of "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1), and in light of the Sentencing Commission's new binding policy statement, the Court should reduce Smith's sentence to one that fits his individual case.

## Statement of Facts

### A. At age 32, Smith, with a history of addiction and low-level drug dealing, was arrested for participating in a drug conspiracy.

Patrick Smith was born in December 1978, in a small town in northern Alabama. (Presentence Report (PSR) at 19.) Raised by "good parents," (*id.* at 19), he eventually developed into a pleasant young man, even by the estimation of the prosecutor who chose to send him to prison for life. (AUSA Koshy, Hr'g Tr., R.1615, PageID# 9967.)

Unfortunately, Smith developed an addiction early and consequently attended an inpatient program as a teenager. (PSR at 20.) While still a juvenile, he was arrested for twice selling crack cocaine to an informant. (*Id.* at 15.) He was prosecuted as an adult, and after a month in jail, he was placed on probation. (*Id.*)

In 1999, at age 20, Smith was prosecuted for two drug offenses, one involving the possession of more than 2.2 pounds of marijuana "for other than personal use"[1] and the other

[1] The Alabama statute made it a felony to either (1) possess marijuana "for other than personal use," or (2) simply possess marijuana after previously incurring a simple-possession-of-

involving a sale of marijuana to an undercover officer. (PSR at 16.) For this pair of crimes, he incurred concurrent sentences of 15 years, and he also incurred a concurrent sentence for the revocation of his probation. (*Id.*) He did not nearly serve 15 years; records show he was at large again by 2005. (*See id.* at 17.) Smith believes he spent less than three years in prison for these offenses. (D.E. 2032, Supp. Mot. at 2.)

After Smith's release, he returned to working low-wage jobs, primarily as a construction worker or a janitor. (PSR at 21.) Eventually he also helped his friend Travis Gentry with drug trafficking in Tennessee, just north of the border with Alabama.

In about May 2010, federal authorities started wiretapping some phones in a drug-trafficking investigation that eventually centered on Gentry. (PSR at 7.) On March 17, 2011, after gathering information for about ten months, they arrested several people involved in the drug operations, including Smith. (*Id.* at 2.)

**B. Wiretap evidence exposed Smith to a mandatory sentence of life.**

In April 2011, the government filed a one-count indictment against Smith and 19 co-defendants. (PSR at 6.) The indictment charged a drug-trafficking conspiracy that lasted for ten months. (*Id.*) It alleged the conspiracy involved 280 grams or more of crack, which would mean the conspirators distributed at least 28 grams (about 1 ounce) of crack per month.[2]

---

marijuana misdemeanor. Ala. Code Ann. 13A-12-213 (1999). (*See* PSR at 16.) But Smith had no prior marijuana misdemeanor conviction. (*See id.* at 15-16.)

[2] The indictment also charged enhanced quantities of powder cocaine and marijuana, but those quantities were not sustained at trial, and they are unimportant here. It seems the market price for an ounce of cocaine at that time was about $1,000. (*Id.* at 9.) If the conspiracy involving 20 defendants distributed 280 grams (28 ounces) of crack cocaine over a period of 10 months, that would mean each of the 20 defendants would be responsible, on average, for less than $5 of cocaine per day. That is because 28 ounces would be worth about $28,000, or $2,800 per month for 10 months, or $94 per day for that 10-month period. Because there were 20 defendants, that would amount to less than $5 per defendant per day ($94/20 = $4.70).

Even though the alleged quantity of 280 grams did not, when spread over 10 months, necessarily correspond to a major operation, that quantity would suffice to trigger the harshest available statutory penalties, namely 10 years to life. 21 U.S.C. § 841(b)(1)(A). To find a defendant guilty of this conspiracy, the government had to show only that he or she agreed to participate, even without committing an overt act. (*See* Court, Hr'g Tr., R.1615, PageID# 9957-59 (reviewing pattern jury instructions).). Such a participant would be responsible for the entire quantity attributable to the conspiracy, regardless of whether that quantity was reasonably foreseeable to the participant.[3]

Furthermore, the applicable drug statute included a harsh recidivist, three-strikes provision, which would be triggered if, and only if, the prosecutor chose to file a so-called "§ 851 notice" identifying prior "felony drug offense" convictions prior to a guilty plea or trial. See 21 U.S.C. § 851. A "felony drug offense" was a term defined so broadly that it included *any* drug felony, even those felonies (1) punished merely with probation, (2) involving merely simple possession, *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998), or (3) committed as a mere juvenile, as long as adjudicated in adult court. *United States v. Graham*, 622 F.3d 445, 459-

[3] In *United States v. Swiney*, 203 F.3d 397 (6th Cir. 2000), the Sixth Circuit held that a conspirator is responsible *only* for all quantities that he directly was involved with or that were reasonably foreseeable to him (*i.e.*, within the scope of the criminal activity that he jointly undertook). *Id.* at 402-06. Simply put, the *Swiney* rule limits responsibility to the scope of Pinkerton liability. *Id.* But in *United States v. Robinson,* 547 F.3d 632 (6th Cir. 2008), the Sixth Circuit endorsed broader responsibility, holding that a conspirator is simply responsible for all drugs involved in the conspiracy as a whole. *Id.* at 639. The broader *Robinson* rule was endorsed by the Sixth Circuit Pattern Jury Instructions that were in place at the time of Smith's prosecution, and it appears Smith's jury was instructed on that broad *Robinson* rule, without any objection from the defense. (Proposed Jury Instructions, R.1071, PageID# 3513-14.) At trial, the defense made no effort to argue Smith had to be acquitted with respect to the allegation of responsibility for 280 grams, or that such a quantity was not reasonably foreseeable to him. (Mot. for J. of Acquittal, R.1157, PageID# 3376; Hawkins, Trial Tr., R.1454, PageID# 9081-82.) Today, the Sixth Circuit evidently follows the narrower, *Swiney* rule. *United States v. Rosales*, 990 F.3d 989, 997-98 (6th Cir. 2021).

64 (6th Cir. 2010). If the prosecutor chose to file an § 851 notice of two prior "felony drug offense" convictions, and if a defendant was convicted for participating in a drug-trafficking conspiracy involving at least 280 grams of crack cocaine, the statutory mandatory penalty was life in prison. 21 U.S.C. § 841(b)(1)(A) (2011).

Smith was exposed to this penalty—a statutory mandatory minimum of life—even though his prior convictions were low-level. *Spikes,* 158 F.3d at 932; *Graham*, 622 F.3d at 459-64.

### C. Smith's lawyer let the plea agreement fall apart when he failed to adequately address Smith's doubts about recidivist sentencing.

Smith hired Travis Hawkins to defend himself against this charge. For reasons given above, it should have been obvious to Hawkins that Smith's prior drug convictions exposed him to mandatory life. And it should have been obvious in light of the wiretap evidence that Smith had little defense against the conspiracy charge. Those wiretaps showed, at a minimum, that Smith and Gentry jointly cooked 3 ounces of powder into crack on September 6, 2010; that Smith was trying to help Gentry buy a couple ounces of cocaine on September 10, 2010; and that Gentry was going to sell 3 ounces of cocaine to Smith on January 27, 2011, but refrained because he thought police were present. (PSR at 9-11.) Thus, the wiretaps seemed to show Smith worked for Gentry only sporadically over the 10-month period, and that his role was mainly as an occasional assistant or connection to suppliers; but still they showed him guilty of conspiring during the alleged period with Gentry to make and distribute crack cocaine. (*Id.*) So Smith was in a bad spot, facing a charge that the government could probably leverage into a life sentence.

One way to get a sentence below a statutory mandatory minimum is to cooperate with the authorities. *See* 18 U.S.C. § 3553(e). In light of the threat of a life sentence, Smith entered a guilty plea to the conspiracy count under a plea agreement that would require his cooperation.

(Plea Agreement, R.496, PageID# 1329.) When Smith pleaded guilty, he admitted that the aforementioned wiretaps showed him cooperating with Gentry in drug trafficking in the way indicated above. (*Id.*, PageID# 1334-42.) Because the prosecutor had not filed the § 851 notices of Smith's prior "drug felony offenses," his plea to the conspiracy subjected him not to a mandatory penalty of life, but rather to a penalty of 10 years to life. (*Id.*) Their agreement provided that, if the prosecutor was satisfied with Smith's cooperation, he would agree to a sentence of 12 to 14 years, and that Smith would accept a sentence in that range. (*Id*. PageID# 1334-36.) The agreement also provided that, if the prosecutor was dissatisfied with Smith's cooperation, he could withdraw from the agreement (and, presumably, he might then file the § 851 notices). (*Id*.)

On December 10, less than a month after pleading guilty, Smith wrote a letter to the Court complaining that his lawyer, Hawkins, had pressured him to take the plea agreement by "misleading" him into thinking he qualified as a "car[]eer offender" which put him in "Category 6." (Letter, R.550, PageID# 1584.) He said his own research led him to the conclusion that he was not a "career offender." (*Id.*)

Smith's discussion of "career offender" and "Category 6" made it clear he was referring to the provision in Section 4B1.1 of the Guidelines Manual, which is called the "Career Offender" guidelines and automatically puts a qualifying defendant in Criminal History Category 6. *See* U.S.S.G. § 4B1.1(b). The Career Offender rule is another three-strikes, recidivist penalty. It is similar to the § 851 three-strikes recidivist penalty discussed above because each triggers a harsh penalty for drug trafficking if the defendant has two prior qualifying drug convictions.

But the two provisions are different and distinct. The § 851 penalty is statutory and mandatory, and a prior offense qualifies as a so-called "strike" if it amounts to a "drug felony

offense," as defined by statute. In contrast, the Career Offender penalty is a guideline provision and thus is merely advisory. And a prior offense qualifies as a "strike" if it amounts to a "controlled substance offense," as defined by the guidelines. U.S.S.G. § 4B1.1(a). To count as a "controlled substance offense," a crime must involve at least an intent to manufacture, import, export, distribute, or dispense the drug—not to simply possess it for personal use. U.S.S.G. § 4B1.2(b). Thus, Smith might reasonably doubt his prior Alabama felony convictions for "possession" of marijuana would count as career-offender predicates since on their surface the crime was simply "possession," and thus he could reasonably doubt whether he qualified as a "career offender," which was the complaint articulated in his letter.

That doubt should not have mattered at all. It was the *mandatory* § 851 penalty that compelled Smith to plead guilty to avoid a *mandatory* life sentence; the merely *advisory* career-offender guideline lacked such dire impact. In any event, upon examination, it was quite clear Smith's Alabama convictions would count as "controlled substances offenses" since he, lacking any prior marijuana misdemeanor, must have pleaded under the "other than personal use" prong of the Alabama possession statute, and the Eleventh Circuit had held that a conviction under that prong of the Alabama statute necessarily entailed an intent to distribute. *United States v. Robinson*, 583 F.3d 1292, 1295-96 (11th Cir. 2009).

Yet Hawkins failed to adequately address Smith's doubts, and those doubts spun out of control as Smith lost faith in Hawkins at a status conference held December 15. Although Hawkins started the conference by saying he understood that the § 851 statutory recidivist penalty exposed Smith to mandatory life and was a compelling reason for entering the plea agreement, he later said that it "would be great news" if Smith turned out not to be a career offender and that career offender status must "inform" Smith's plea decision. (Hawkins, Hr'g

Tr., R.599, PageID# 1798, 1799, 1802.) As Smith understood it, it would indeed be "great news" if he wasn't a "career offender" and he had reason to believe he wasn't since his Alabama marijuana convictions were for "possession"—and so he believed he had plead guilty on bad advice. (Smith, Hr'g Tr., R.599, PageID# 1804.) For his part, the prosecutor reasonably explained that, from his perspective, the "driving force" for the agreement must have been the threat of mandatory life under § 851, and that it "doesn't matter if [Smith is] a career offender or whatever." (AUSA Koshy, Hr'g Tr., R.599, PageID# 1807.) Hawkins said that he would get with Smith the following week and address his doubts regarding the career-offender enhancement, and the hearing closed. (Hawkins, Hr'g Tr., R.599, PageID# 1806.)

Hawkins did not obtain the underlying Alabama conviction records, did not come up with a clear or well-founded answer to Smith's career-offender question, and did not resolve Smith's doubts. (*See* Hawkins, Hr'g Tr., R.1615, PageID# 9913, 9925-27; Motion to Continue, R.589, PageID# 1756 (reporting that, as of January 9, 2012, he still needed to get Alabama records).) Instead, on January 4, 2012, he filed a one-page motion to withdraw the guilty plea, without stating the reason for withdrawing. (Mot. Withdraw Guilty Plea, R.582, PageID# 1748.)

The Court held a hearing on the motion. Hawkins came to the hearing unaware that, at the December 15th hearing, Smith had reaffirmed his guilt of conspiracy, and Hawkins started by saying Smith wanted to withdraw because he believes "he's not guilty of conspiracy." (Hawkins, Hr'g Tr., R.1615, PageID# 9920-21; *cf. see* Smith, Dec. 15 Hr'g Tr., R.599, PageID# 1804 ("I'm not here to try to say that I'm not guilty").) In discussing the motion, the prosecutor made it clear that: (1) if Smith simply were to decline to cooperate, the government would withdraw from the agreement, effectively granting Smith's stated wish to withdraw his plea; (2) if that were to happen, the government would file the two § 851 notices and subject Smith to a penalty of

mandatory life if he lost at trial; and, (3) Smith's admissions of guilt in his proffer would limit his defense at trial by preventing him from doing anything but holding the government to its burden of proof (*e.g.*, Smith could not present proof or testimony of innocent explanations for the wiretapped conversations without opening the door to use of his proffered admissions of guilt). (AUSA Koshy, Hr'g Tr., R.1615, PageID# 9925, 9936.)

Even though Hawkins evidently hadn't thought about this proffer problem and even though the prosecutor's § 851 threat made it crystal clear that the stakes for Smith couldn't be higher, Hawkins did not seek a recess to discuss with Smith his monumental decision. Instead, he put Smith on the stand, evidently without having prepared him to testify. (Smith, Hr'g Tr., R.1615, PageID# 9963 ("I didn't know we were going to do this today") 9964 (same).) And, even though all Smith had to do to get his wish was to say that he wouldn't cooperate, Hawkins led Smith through implausible and bridge-burning testimony that he was simply not "guilty of conspiracy." (*Id.* PageID# 9940.) When Smith pointedly made that implausible assertion on cross-examination, the prosecutor announced he was "withdraw[ing] from the plea agreement" because he was "not going to be forced into a position of using him as a cooperating witness when he can't admit to his own liability." (AUSA Koshy, Hr'g Tr., R.1615, PageID# 9965.) The Court then granted Smith's motion to withdraw his plea. (Court, Hr'g Tr., R.1615, PageID# 9965.)

The prosecutor indicated that under the circumstances he believed it was his duty to file the § 851 notices:

> I would just like to say on the record, Mr. Smith and I have had conversations, he's been very affable, very friendly. That's why in part I was trying to, I think, largely save him from himself.
>
> I have done the best that I can on that, but I have got to do what I have got to do at this point [and file the § 851 notices].

(AUSA Koshy, Hr'g Tr., R.1615, PageID# 9967.)

**D. Smith was convicted and sentenced to life in prison.**

As warned, the prosecutor filed § 851 notices of Smith's prior "drug felony offenses." (Notice, R.1110, PageID# 3612.) Smith stood trial on the drug conspiracy count as well as a subsequently-added count of conspiring to launder drug proceeds. At trial, the wiretap proof of a conspiracy between Smith and Gentry was "overwhelming." (Sixth Circuit Mem. Op., R.1711, PageID# 10320.) Smith was convicted on both counts. (PSR at 7.)

This Court, saying it was "just incredible" that Smith was subject to such a harsh mandatory sentence, imposed the sentence of life in prison. (Court, Sent. Tr., R.1504, PageID# 9406.) Procedure required the Court to find the sentence imposed was "not greater than necessary" to satisfy the goals of federal sentencing. 18 U.S.C. §§ 3553(a), (a)(2). The Court stated the opposite was true:

> So I don't find that the sentence I must impose complies with 3553(a) and my obligation to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing. It doesn't. However, my hands are tied, and I have no choice.

(*Id.* PageID# 9411.)

Smith fruitlessly appealed his sentence. Later, acting *pro se*, he filed a post-conviction attack under 28 U.S.C. § 2255, which was dismissed because he failed to file it within the statutory deadline. (No. 3:17-cv-570, Mem. Order, R.12, PageID# 110.)

**E. The Department of Justice changed its charging policy and Congress drastically changed the law on § 851 enhancements.**

Two months after this Court sentenced Smith, the Department of Justice issued new guidance regarding § 851 enhancements. (D.E. 2032-1, Holder Policy Mem.) The DOJ's new guidance told prosecutors to refrain from filing § 851 enhancements unless the defendant was a

leader of an organization, used or threatened violence, had a prior history of violent or recent serious offenses, or was tied to a gang or cartel. (*Id.*) Plus, it told them to consider refraining from doing so if a § 851 enhancement would produce "a gross sentencing disparity with equally or more culpable co-defendants." (*Id.*) And, although the Holder Policy was later rescinded, it has now been replaced by the Garland Policy regarding the filing of § 851 enhancements that turns on essentially the same criteria. (Ex. 1, Garland Policy Mem. at 2-3.) Under the revised DOJ policy, Smith would not qualify for any § 851 enhancement.[4]

In December 2018, Congress enacted the First Step Act to reform some aspects of federal criminal law, including § 851 enhancements. Due to those reforms, a defendant facing a drug charge like Smith's could no longer be subject to a mandatory sentence of life. 21 U.S.C. § 841(b)(1)(A). Two changes are relevant.

First, Congress changed the penalties. If a defendant is convicted of an offense involving 280 grams of crack and has two qualifying predicate drug offenses, the mandatory minimum sentence is now 25 years, rather than life. 21 U.S.C. § 841(b)(1)(A). If that defendant has just one qualifying predicate offense, the mandatory minimum is now 15 years, rather than 20 years. *Id.*

Second, Congress changed the requirements for a prior conviction to qualify as a § 851 predicate. As explained above, previously a drug conviction qualified as long as it was a felony,

---

[4] Under the Garland Policy, not only would Smith be ineligible for an § 851 enhancement, but he would likewise be ineligible for an enhancement based on the conspiracy's quantity. (*Id.*) That is, under the Garland Policy, Smith would not be charged with responsibility for 280 grams of crack, which is a charge that triggers a statutory mandatory minimum of 10 years and supports the 851-enhanced mandatory sentence of life. (*Id.*) Rather, because evidently none of the criteria in the Garland Policy apply to Smith, he would be charged simply with violating 21 U.S.C. § 841(b)(1)(C) for conspiring to traffic an unstated quantity of drugs, an offense triggering a penalty of 0 to 20 years. (*Id.*)

even if the defendant was convicted of simple possession and served no time in jail. Under the revised law, to qualify as prior drug offense would have to be: (a) punishable by 10 years or more; (b) actually punished by service of more than 12 months in custody; and (c) include a trafficking element, such as manufacturing or an intent to distribute. 21 U.S.C. § 841(b)(1)(A) (qualifying predicate is a "serious drug felony"); 21 U.S.C. § 802(57) (a "serious drug felony" must, *inter alia*, be a conviction "for which the offender served a term of imprisonment of more than 12 months" and must satisfy the definition of 18 U.S.C. § 924(e)(2)); 18 U.S.C. § 924(e)(2) (requires that the offense be one with "a maximum term of imprisonment of ten years or more . . . prescribed by law").

Thus, under today's law, it is clear that, at worst, Smith would be subject to a mandatory sentence of 25 years, not life. Yet it also appears that his mandatory sentence would be just 15 years. That is so because the only time he actually "served a term of imprisonment of more than 12 months," 21 U.S.C. § 802(57), was when he served a few years to satisfy one set of concurrent sentences for all his drug offenses. Thus, he had to serve those years to satisfy one of the convictions, and he had to serve no additional time to satisfy the others. In that respect he did not actually "serve[]" a term of imprisonment of more than 12 months on any conviction but one of them. 21 U.S.C. § 802(57). Under this view of the law, Smith has just one qualifying predicate, and his mandatory minimum would now be 15 years. *But see United States v. Corona-Verduzco*, 963 F.3d 720, 723-24 (8th Cir. 2020) (rejecting this type of argument regarding concurrent sentences).

**F. Smith has served as a model prisoner for more than 12.5 years.**

In late 2020 and early 2021, Smith litigated a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1) in this Court. At that time, Smith had a clean disciplinary record, and Smith

reports that his record has remained clean to date. Plus, he has received strong letters of support from three current supervisors within prison:

- Material Handler Supervisor Harris reports that Smith's adjustment to FCI Memphis was "beyond exceptional," that he "maintain[s] a great rapport with both staff and other inmates," and that he is very punctual and "well-mannered." (Ex. 2, BOP Letters at 1.)
- Material Handler Supervisor Cole reports that Smith is a "hard worker" as lead laundry man, is "mild mannered," and works "with no complaints." (*Id.* at 2.)
- Correctional Counselor Monix reports that Smith "is very levelheaded and very good at executing multiple tasks" and "is considered as a role model inmate." (*Id.* at 3.)[5]

In late September 2023, Smith submitted to his Warden a request for a sentence reduction under § 3582(c)(1) based on the same criteria discussed in this motion (Ex. 3, Warden Letter), thereby satisfying the requirement that he exhaust his administrative remedies. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (requiring 30-day waiting period before ripe for adjudication in court). The Warden has not acted on that request. Smith's release plan would be to live in northern Alabama with his sister, who lives with her daughter and is fully employed.[6]

**<u>Argument</u>**

Section 3582(c)(1) of Title 18—sometimes called the "compassionate release" statute[7]—allows a court to reduce a prisoner's final, lawfully-imposed sentence when "extraordinary and

---

[5] In addition, letters of support from Smith's family are available at docket entry 2034-1, PageID# 11795-11802.

[6] Contact information has been provided to the Probation Office.

[7] This label is a "misnomer" because § 3582(c)(1) is not limited to cases involving terminal illness or the like. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023) (Reason for Amendment to U.S.S.G. § 1B1.13) (noting that the label "compassionate release" is inapt because "that phrase appears nowhere in the [Sentencing

compelling reasons" justify a reduction, when such a reduction is consistent with applicable policy statements found at U.S.S.G. § 1B1.13, and when such a reduction is warranted by the traditional sentencing factors listed at 18 U.S.C. § 3553(a). *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc). Smith will address those three requirements in turn.

## I. The Court should find extraordinary and compelling reasons warrant relief.

Through § 3582(c)(1), Congress has given the courts the power to reduce a sentence when "extraordinary and compelling reasons" justify that relief. And, through 28 U.S.C. § 994(t), Congress "delegated" to the Sentencing Commission the task of saying "what qualifie[s] as 'extraordinary and compelling.'" *McCall*, 56 F.4th at 1053. Effective November 1, 2023, the Sentencing Commission has promulgated new policy statements that establish what qualifies as "extraordinary and compelling" under § 3582(c)(1). 88 Fed. Reg. 28,254, 28,258 (May 3, 2023) (Sentencing Guideline amendments to be effective Nov. 1, 2023).[8]

It bears emphasis that these new policy statements are binding on the courts. The Commission's authority to issue these policy statements is just like its authority to issue policy statements regarding a neighboring provision, § 3582(c)(2), that pertains to retroactive guideline amendments. Sections 3582(c)(1) and (c)(2) were drafted together and appear in the same subsection. They share a prefatory phrase, and they both allow a reduction only where it "is consistent with applicable policy statements issued by the Sentencing Commission." These facts supported the Supreme Court's holding in *Dillon v. United States*, 560 U.S. 817, 825–26, 830 (2010), that the Commission can issue "binding" policy statements to govern the application of §

---

Reform Act] and sentence reductions that do not result in immediate release are authorized by the law").

[8] Attached is a copy of the Commission's more readable version of the guideline amendment (Ex. 4.)

3582(c)(2), even post-*Booker*.[9] Also, Sections 3582(c)(1) and 3582(c)(2) are addressed together in the Sentencing Commission's enabling statute, 28 U.S.C. § 994; that statute speaks of them together in granting the Commission authority to promulgate policy statements that "in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18," including regarding the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)." 28 U.S.C. § 994(a)(2)(C).

Thus, what the Sixth Circuit has said about the Sentencing Commission's authority in the § 3582(c)(2) context applies equally in the § 3582(c)(1) context: that the Commission's policy statements are "binding" because issued pursuant to a power delegated by Congress:

> When Congress granted the district courts authority to reduce otherwise valid sentences pursuant to § 3582(c)(2), it explicitly restricted judicial discretion by incorporating the Commission's policy statements, which limit the extent of the reduction: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*." 18 U.S.C. § 3582(c)(2) (emphasis added). The Commission's policy statements (which are an implementation of its authority to decide whether and to what extent its amendments are retroactive) are binding because they are an exercise of that statutory authority.

*United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009); *see also, e.g., United States v. Doe*, 564 F.3d 305, 310 (3d Cir. 2009) ("The plain language of the statute, therefore, specifically incorporates the Commission's policy statements."); *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009) ("When Congress granted district courts discretion to modify sentences in section 3582(c)(2), it explicitly incorporated the Sentencing Commission's policy statements limiting reductions. . . . Thus, the Commission's policy statements should for all intents and purposes be viewed as part of

[9] *United States v. Booker*, 543 U.S. 220 (2005).

the statute."); *United States v. Taylor*, 743 F.3d 876, 879 (D.C. Cir. 2014) ("Congress expected—indeed, required—that binding policy statements would govern sentence reduction proceedings.").[10]

The Sentencing Commission's authority to say what qualifies as "extraordinary and compelling" in the § 3582(c)(1) context is neither new nor controversial. It might seem that way because § 3582(c)(1) jurisprudence evolved only recently, when there was no policy statement that applied to defendant-filed motions. *See United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that the pre-amendment policy statement was not applicable to defendant-filed motions). During this period, a sort of common law of § 3582(c)(1) developed, with circuit courts providing conflicting guidance and limitations, particularly regarding what could be considered "extraordinary and compelling." *Compare McCall*, 56 F.4th at 1055–60 (restricting district courts' discretion to find that certain circumstances were "extraordinary and compelling") *with United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (declining to erect any categorical limitations in the § 3582(c)(1) context in the absence of an applicable policy statement). But the Commission has authoritatively resolved that conflict by issuing new, binding policy statements that say what qualifies as "extraordinary and compelling" reasons.[11]

[10] The only circuit courts that have considered whether § 1B1.13 is binding have determined that it is binding whenever applicable. *United States v. Jenkins*, 50 F.4th 1185, 1193 (D.C. Cir. 2022) (explaining that "[s]ection 1B1.13 binds courts in cases where it is 'applicable'"); *United States v. Crandall*, 25 F.4th 582, 584 (8th Cir. 2022) ("Although a policy statement standing along may be merely 'advisory,' . . . the statute in this case [§ 3582(c)(1)(A)] makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence.") (internal citation omitted); *United States v. Bryant*, 996 F.3d 1243, 1251–52 (11th Cir. 2021) ("The answer to whether the Commission's definition of 'extraordinary and compelling reasons' binds district courts is clear. Indeed, both the Supreme Court and this Court have held that Congress's consistent-with requirement makes the relevant policy statements binding on district courts.").

[11] Although the Supreme Court usually is responsible for resolving circuit conflicts, the Supreme Court itself has recognized that the Sentencing Commission can "eliminate circuit conflict[s]

In sum, the Sixth Circuit has explained that Congress "delegated" to the Commission the power to say "what qualifie[s] as 'extraordinary and compelling.'" *McCall*, 56 F.4th at 1053. Exercising that delegated power, the Commission has promulgated an updated policy statement at U.S.S.G. § 1B1.13 that is binding on the courts. Two provisions of the Commission's new and binding policy statement at § 1B1.13 are applicable here: (1) the provision for an "Unusually Long Sentence," and (2) the catch-all provision for "Other Reasons." 88 Fed. Reg. at 28,255 (to be promulgated as U.S.S.G. §§ 1B1.13(b)(5), (6)).

### A. Smith's life sentence is an "unusually long sentence," making him eligible for relief.

When enacting § 3582(c), the Senate said § 3582(c)(1) gave the courts the power to reduce a final, lawfully-imposed sentence in light of certain "changed circumstances." S. Rep. No. 98-225, at 55 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3238-39. It said that, for example, such cases would "include cases of severe illness [and] cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." *Id.*

Consistent with that legislative history, the Sentencing Commission says that an "unusually long sentence" qualifies as an "extraordinary and compelling" reason under

---

over the meaning" of matters that Congress delegated to the Commission. *Braxton v. United States*, 500 U.S. 344, 348–49 (1991); *see also Batterton v. Francis*, 432 U.S. 416, 425, (1977) (explaining that where Congress has "expressly delegated" a policy matter to an agency, that agency's regulations have "legislative effect," and "[a] reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner"). As explained above, with § 3582(c)(1), Congress directed the Sentencing Commission (not the courts) to set forth "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t); *See McCall*, 56 F.4th at 1053. *See generally* 88 Fed. Reg. at 28,258 (Reason for Amendment) (explaining that "the Department of Justice successfully opposed Supreme Court review of [the circuit conflict over the contours of 'extraordinary and compelling'] on the ground that it should be addressed first by the [Sentencing] Commission.").

§ 3582(c)(1). 88 Fed. Reg. at 28,255 (to be promulgated at § 1B1.13(b)(6)). According to its new, binding policy statement, § 3582(c)(1) relief is available in the following circumstance:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary compelling reason, but only where such change would produce gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, after full consideration of the defendant's individualized circumstances.

*Id.* Thus, to get relief, a defendant must show: (1) he has served at least 10 years; and (2) he "received an unusually long sentence." In that case, a "change in the law" can be considered when deciding if he presents an "extraordinary and compelling" reason for relief, as long as that change in the law would produce a "gross disparity" in his actual sentence and the one he would probably receive today. *Id. See generally* S. Rep. No. 98-225, at 55 (saying a sentence might be reduced as "unusually long" in light of "changed circumstances").

Below, Smith shows he satisfies these criteria, including a change in the law producing a gross disparity in sentencing outcomes.

**1. Smith has served more than 10 years.**

Smith was arrested on this case in March 2011, and therefore he has been in custody for this offense for more than 12.5 years. With 15% good-time credits factored in, he has served a federal sentence of 14.7 years.

**2. Smith's life sentence is "unusually long" is multiple respects, particularly in light of changed circumstances.**

Smith's life sentence is inherently an unusually long sentence, even when judged under the standards of the time when it was imposed. Smith incurred that sentence for playing an

unremarkable role in an unremarkable drug-trafficking conspiracy.[12] And Smith's prior criminal history was also unremarkable, consisting of (1) a conviction for twice selling crack cocaine to an informant at age 17; and (2) a pair of convictions (not separated by an intervening arrest) at age 20 for trafficking marijuana in amounts of 2.2 pounds or less—a substance which is now legal to possess in many states. *See* 88 Fed. Reg. at 28,272 (amending criminal-history guideline "to recognize the changing legal landscape as it pertains to simple possession of marihuana offenses"). In short, Smith, having prior convictions for low-level drug trafficking at age 17 and 20, committed an ordinary drug-trafficking offense in the instant case. Yet he is serving the extraordinary sentence of life in prison without any chance of parole.

Even by U.S. standards—which are very harsh by global standards[13]—a life without parole sentence for nonviolent drug dealing is unusual. For starters, "[l]ife imprisonment sentences are rare in the federal criminal justice system" for any type of crime. (Ex. 5, U.S. Sentencing Comm'n, *Life Sentences in the Federal System*, at 1 (2015).) The average federal

---

[12] Congress designed the 280-grams-of-crack-cocaine threshold to direct the harshest mandatory penalties at "kingpins." *United States v. Diaz*, No. 11-CR-21-2 (JG), 2013 U.S. Dist. LEXIS 11386, *22-23 & n.34 (E.D.N.Y. Jan. 28, 2013). But "kingpins" are "the manufacturers or *the heads of organizations*, who are responsible for creating and delivering very large quantities of drugs," whereas mere "serious" or "middle level" traffickers are those who are "the *managers* of the retail level traffic" who distribute "*substantial* street quantities." *See* U.S. Sentencing Commission, *Mandatory Minimum Penalties for Drug Offenses in the Federal Criminal Justice System*, at 10-11 (Oct. 2017) (citing legislative history) (italics added)). Smith was far from a kingpin. He was subordinate to Gentry, who was the "center" of the conspiracy. (Sixth Circuit Op., R.1711, PageID# 10317-18). According to wiretaps, Smith participated just a handful of times over the length of a10-month conspiracy. (PSR at ¶¶ 15(a)-15(k).) And, to surpass the 280-gram threshold, the activities of the conspirators had to be cumulated over a period of 10 months. *See supra* p. 3 & n.2 (calculating that each conspirator was only necessarily responsible for $5 of crack per day of the conspiracy). Neither this conspiracy nor Smith's role in it were major.

[13] Andrew D. Liepold, *Is Mass Incarceration Inevitable?* 56 Am. Crim. L. Rev. 1579, 1591-99 (Fall 2019) (stating "the United States not only has the highest *number* of inmates in the world but also incarcerates people at the highest *rate*" and explaining the rate in the United States is *more than five times* the rate of China, the nearest large-economy competitor).

sentence for murder is less than 22 years and, for drug trafficking, less than 7 years. (Ex. 6, U.S. Sentencing Comm'n, 2022 Sourcebook, Table 15.) In drug trafficking cases, a life sentence is imposed "less than one-third of one percent" of the time. (Ex. 5, *Life Sentences* at 4.) Life sentences are rightfully rare in drug cases because "life without parole sentences share some characteristics with death sentences that are shared by no other sentences," *Graham v. Florida*, 560 U.S. 48, 49 (2010), and such an extraordinarily harsh sentence is hard to ever justify for a crime lacking the "moral depravity" inherent to intentional homicide. *Id.* at 69-70, 82. Plus, it is especially hard to justify imposing such a sentence mandatorily, without consideration of the traditional sentencing factors of 18 U.S.C. § 3553(a).[14]

Indeed, no one else in this particular drug conspiracy got a life sentence. Sixteen coconspirators pled guilty and received custodial sentences. Their average sentence was 73 months, with the longest of those sentences being 120 months.[15] Two coconspirators, Travis Gentry and Frank Randolph, were convicted at trial along with Smith. Randolph wound up with a sentence of 60 months. Although Gentry initially received a sentence of 30 years, it has been reduced to about 10 years' time served partly due to his increased risk of severe illness from Covid-19. Even though Smith's role was not all that significant, he is the only one who remains

[14]Sixty-two percent of federal judges responding to a survey said they believe "that mandatory sentences were generally too high across all cases." *United States v. D.W.*, 198 F. Supp. 3d 18, 131 (E.D.N.Y. 2016) (citing survey by U.S. Sentencing Commission). Former Supreme Court Justice Anthony M. Kennedy stated that "'[i]n too many cases, mandatory minimum sentences are unwise and unjust.'" (*Id.* (quoting ABA Journal).)

[15] These 16 coconspirators received sentences as follows (totaling 1,167 months): Alfred Coffey, 120 months; Randy Randolph, 29 months; Channin Randolph, 70 months; James Coffey, 78 months; Nicholas White, 87 months; Brandon Matthews, 54 months; Jonas Hayes, 120 months; Tony Hedge, 60 months; Kejuana McCutcheon, 120 months; William Head, 120 months; Clanisha Allen, 9 months; Todd Bryant, 60 months; Spencer Randolph, 7 months; Gara Harris, 35 months; Brandon Hooper, 78 months, Eddie Dixon, 120 months. Plus, a seventeenth coconspirator, Betty Gentry, received a sentence of probation.


Case 3:11-cr-00082 Document 2085 Filed 10/12/23 Page 20 of 32 PageID #: 12050

in prison for this crime, and his sentence condemns him to remain there for the rest of his life. Thus, his sentence is unusually long not only by global and national standards, but also by this case-specific standard.

Since the time of Smith's sentencing, Congress and the DOJ have taken actions that make his sentence an even more extreme outlier. These "changed circumstances," S. Rep. No. 98-225, at 55, confirm Smith is now eligible for relief.

First, as detailed above, *see supra* pp. 12-14, Congress reduced the recidivist sentence enhancements for offenses involving 280 grams or more of crack cocaine. At the time Smith was sentenced, two prior drug felonies would trigger—if the prosecutor chose to cite them in a § 851 notice—a sentence of mandatory life. Today, two drug predicates will, if cited in a § 851 notice, trigger 25 years. Arguably, Smith has just one predicate under the new statute, which means his mandatory minimum would be 15 years (assuming his priors were cited in a § 851 notice). *See supra* pp. 13-14. The difference between a life sentence and one of 15 or even 25 years is tremendous because a sentence of life without parole is uniquely harsh. *See Graham*, 560 U.S. at 49. That difference amounts to a "gross disparity" between the sentence Smith received previously and the one he would probably receive today. 88 Fed. Reg. at 28,255 (to be promulgated at § 1B1.13(b)(6)). The analysis could end here.[16]

But this gross disparity becomes even more glaring when one considers the recent actions of the DOJ. As mentioned above, the DOJ has changed its policy for charging both § 851 enhancements and the threshold quantities which trigger statutory mandatory minimums. (Ex. 1,

[16] Granted, in the absence of such a policy statement, the Sixth Circuit held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis." *McCall*, 56 F.4th at 1066. But that holding is obsolete because, as just explained *supra* pp. 14-17, the Commission's new policy statement is binding on the courts.

Garland Policy Memo at 1-3.) The new policy tells prosecutors not to charge these enhancing elements unless the defendant used or threatened to use of violence, possessed a firearm, had a "significant managerial role in the trafficking of a significant amount of drugs," had "significant ties to a large-scale criminal organization," or had a significant history of violence, firearm possession, or trafficking "significant quantities" of drugs. (*Id.* at 2.) According to Smith's presentence report, he checks none of these boxes. Under the DOJ's new policy, it appears Smith would not be charged with the 280-gram threshold quantity, nor would he be subjected to § 851 enhancements. That would make his statutory penalty range 0 to 20 years. This change has particular significance here because Smith's prosecutor seemingly filed the § 851 notices because he felt duty-bound to do so. (AUSA Koshy, Hr'g Tr., R.1615, PageID# 9967 ("I have got to do what I have got to do at this point [and file the § 851 notices]."))

In light of all these changes, the Court could consider Smith's likely mandatory minimum today to be 25 years, or 15 years, or even 0 years. In any case, the Court should consider the penalty Smith would likely receive today to be grossly disparate with the mandatory life sentence he received over a decade ago. Consistent with the new guidance of § 1B1.13(b)(6), the Court should find that Smith's "unusually long sentence" amounts to an extraordinary and compelling reason making him eligible for § 3582(c)(1) relief.

**B. "Other Reasons" likewise warrant finding Smith eligible for relief.**

At U.S.S.G. § 1B1.13(b)(5), the Commission has retained a "catchall ground" for finding extraordinary and compelling reasons warranting relief. 88 Fed. Reg. at 28,258. That catchall ground, labeled "Other Reasons," provides for relief in the following circumstance:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

88 Fed. Reg. at 28,255. Paragraphs (1) through (4) describe grounds for relief based on the defendant's medical circumstances, the defendant's advanced age, the defendant's family circumstances, and the defendant's victimization within prison. *Id.* at 28,254-28,255.

In its Reasons for Amendment, the Commission explains that this catchall ground can apply even when the "other reasons" are *not* "similar in nature and consequence to the specified reasons" in paragraphs (1) through (4). 88 Fed. Reg. at 28,258. Rather, the "other reasons" "need be similar only in gravity[.]" *Id.* Paragraphs (1) through (4) present situations that are grave because the defendant's sentence is causing severe yet no longer justifiable suffering. For example, in those situations, the defendant is likely to die in prison due to a medical crisis beyond anyone's control, or the defendant is suffering severe abuse in prison due to no fault of his own, or the defendant's dependent family member is likely to suffer severely from the defendant's absence due to no fault of their own. In each case, the defendant's custodial penalty triggers a severe hardship that cannot presently be justified by the defendant's crime. In each situation, the punishment has become unjustifiably cruel.

The Commission gives the following example, while also showing how a nonretroactive guideline amendment can play a strictly secondary role in a § 3582(c)(1) reduction:

> For example, a defendant's motion may present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) the offense conduct occurred when the defendant was in his late teens or early twenties; and (c) pursuant to intervening legislation or intervening Guidelines amendments, the sentence likely to be imposed at the time of the motion would be lower than the sentence being served, but not grossly so. In those circumstances, the change in law could not properly be considered an extraordinary and compelling reason warranting a reduction in sentence. However, if the court determines that the combination of the other two factors constitutes an extraordinary and compelling reason, the change in law is among the broad array of factors that may be properly considered in determining the extent of any such reduction.

88 Fed. Reg. at 28,258.

Smith can show "other reasons" amounting to "extraordinary and compelling" that are similar in gravity to those described in the new § 1B1.13(b)(1) through (4). Since Smith's incarceration, changed circumstances have rendered his sentence, likewise, to be unjustifiably cruel as it imposes severe suffering not warranted by his crime. Consider three factors.

*First*, Smith himself has changed. Not only has his rehabilitation been "commendable," 88 Fed. Reg. at 28,258, but it has been superlative. He has served 12.5 years without a single disciplinary infraction, which is a very significant achievement.[17] Moreover, BOP employees have been willing to submit support letters describing Smith's industrious and ethical conduct in prison and labeling him a model inmate. *See supra* pp. 13-14. That type of superlative rehabilitation can contribute substantially towards a finding of "extraordinary and compelling" reasons, although it cannot serve as the sole reason. 88 Fed. Reg. at 28,255 (to be promulgated at § 1B1.13(d)).

*Second*, after Travis Gentry's sentence was reduced during the Covid-19 pandemic, Smith remains the only one of the 19 co-conspirators serving a sentence for their conspiracy.

---

[17] *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) ("He also has not had a single disciplinary incident [in addition to having favorable evaluations]. . . The Court does not see BOP Progress Reports like this often."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing to the Sentencing Commission's study to support the unlikelihood of defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community"); *United States v. Marks*, 455 F. Supp. 3d 17, 36 (W.D.N.Y. 2020) (reducing 40-year sentence to 20 years, and saying "[c]onsidering all the evidence, the Court must make an independent determination, and in this case, given Marks's clean disciplinary record for many years past, and his demonstrably successful efforts at rehabilitation, I conclude that upon release, he will not pose a danger to the community"); *United States v. Sain*, No. 07-20309, 2020 U.S. Dist. LEXIS 185190, at *13 (E.D. Mich. Oct. 6, 2020) ("Given Sain's clean prison disciplinary record, 'incarceration is unnecessary to protect the public from further crimes of the defendant.'" (quoting *United States v. Brown,* 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020)).

That is so even though his role in the conspiracy was not particularly significant. And he will serve that sentence until the day he dies. This development—the release from prison of all Smith's codefendants—now presents a stark and unjustifiable disparity.

*Third*, the DOJ has renounced its former practice of using § 851 enhancements to leverage guilty pleas: "a Section 851 enhancement should not be filed simply to exert leverage to induce a plea or because the defendant elected the right to exercise the right to trial." (Ex. 1, Garland Policy Memo at 3.) The district judge in *United States v. Kupa*, 976 F. Supp. 2d 417 (E.D.N.Y. 2013), a former federal prosecutor (and current member of the Sentencing Commission), explained how the practice of using § 851 enhancements to leverage guilty pleas often produced unconscionable sentences for defendants who chose to stand trial. *Id.* at 419-20, 436, 448-49. Simply put, to incentivize a plea bargain, a prosecutor would threaten to file an § 851 enhancement which would trigger a mandatory sentence of 20 years or life even though the prosecutor knew that sentence would be unjustifiably harsh; if the defendant was foolhardy enough to reject the plea bargain and exercise his right to trial, the prosecutor would follow through with the § 851 threat not to trigger a sentence warranted by traditional sentencing factors *but rather just to give credibility to the prosecutor's plea-bargain threats in future cases*. *Id.* at 448-49 ("The only reason prior felony informations [under § 851] were used against [those who did not capitulate to the § 851 threat] was because the government unsuccessfully tried to coerce them to plead guilty. And because other defendants have to know that the government isn't kidding when it threatens to use prior felony informations against those who have the audacity to go to trial, they become examples."). The defendant was to be punished not so much for his crime, but more for his decision to stand trial in the face of the prosecutor's § 851 threat. *Id.*

As the *Kupa* court explained, "the costs of maintaining prosecutorial credibility can be jarring." *Id.* at 436. Those jarring costs featured "sentences so excessively severe they take your breath away." *Id.* at 420. Those sentences were "destructive[]" and "brutal[]," so harsh they "should instill shame in all of us." *Id.* at 449, 460. The new DOJ policy has renounced the plea-bargaining practice that produced these shamefully cruel sentences. (Ex. 1, Garland Policy Memo at 3.)

It is certain that Smith fell victim to this practice, partly due to his doubts about the wisdom of his guilty plea and partly due to his lawyer's poor management of those doubts. Regardless of Smith's precise reason for balking, AUSA Koshy's statements in this Court make it clear he followed through on his § 851 threat because he felt obligated to do so, not because he believed Mr. Smith deserved a life sentence for his crime. (AUSA Koshy, Hr'g Tr., R.1615, PageID# 9967 ("I have got to do what I have got to do at this point [and file the § 851 notices].")) Since the DOJ has now renounced the policy driving that sense of obligation, it has become crystal clear that Smith's life sentence lacks any legitimate penological justification, not even the dubious one of making an example of a defendant to "maintain[] prosecutorial credibility." *Kupa*, 976 F. Supp. 2d at 436. And a "sentence lacking any legitimate penological justification is by its nature disproportionate to the offense," indicating it is cruel and unusual. *Graham*, 560 U.S. at 71.

The foregoing three factors combine to amount to extraordinary and compelling "other reasons" to reduce Smith's life sentence. Under that sentence, Smith will die in prison even though he has proven himself to be consistently industrious and conscientious and even though it is now obvious that his sentence utterly lacks any "legitimate penological justification." *Id*. By today's lights, Smith's sentence has clearly become unjustifiably cruel, imposing one of the

harshest possible punishments against him even though he has done nothing to deserve to suffer so severely and is doing everything he can to prove he deserves better.

For these reasons, the Court should, consistent with § 1B1.13(b)(5), find Smith eligible for § 3582(c)(1) relief.

## II. Reducing Smith's sentence is consistent with the Commission's policy statements

As shown above, reducing Smith's sentence is consistent with the new § 1B1.13(b), which fleshes out the meaning of "extraordinary and compelling." The analysis above is also consistent with § 1B1.13(d), which provides that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining *whether* and to what extent a reduction in the defendant's term if imprisonment is warranted." *Id.* (emphasis added). And it is consistent with § 1B1.13(e), which states that "the fact an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement."

Finally, the policy statement states that a defendant is ineligible for relief if "a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2) (citing 18 U.S.C. § 3142(g)). Smith's offense did not involve violence against anyone or the community, and his risk of recidivating in middle age is low, especially in light of his service of 12.5 years as a model inmate. Nothing in the policy statement bars relief for Smith.

## III. The § 3553(a) sentencing factors warrant a sentence reduction.

Section 3553(a) of Title 18 establishes the parsimony principle: that a sentence should be "not greater than necessary" to fulfill the goals of federal sentencing. When making that assessment, the sentencing guideline range serves as the "starting point and . . . initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Of course, here Smith's guideline

range was "life," which was precisely because the § 851 enhancements were filed under the former statute, but changes to the law on § 851 enhancements and related practices are the grounds for relief. Smith asks that the Court consider the Guidelines for guidance insofar as relevant in this circumstance. So there are many perspectives from which the Court could view Smith's present guideline range. Smith will identify four of those perspectives, and then he will advocate for the last two on the list.

**1. Applying only the new law on § 851**

Prior to the First Step Act, Smith's mandatory minimum was life. If the Court applies the Act's new rules for § 851 enhancements, Smith's mandatory minimum is, at most, 25 years, and it is possibly just 15 years. *See supra* pp. 11-12.

As for Smith's guideline range, he qualifies as a career offender. (PSR at 13.)[18] The career-offender guideline is pegged to the offense's statutory maximum sentence. U.S.S.G. § 4B1.1(b). Even considering the First Step Act amendments, Smith's statutory maximum sentence would remain life. That statutory maximum would trigger an offense level of 37, to be coupled with a criminal history category of VI. That produces a range of 30 years to life.

**2. Also applying the Garland Policy**

As explained above, under the Garland Policy, Smith would not be charged with any § 851 enhancement. That would reduce his mandatory minimum to 10 years. But it would not affect his statutory maximum sentence or, hence, his career-offender guideline range.

---

[18] From the issuance of *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) in June 2019, until the promulgation of the new career-offender guideline in November 2023, Smith would not have qualified as a career offender because his instant offense of "conspiracy" would not qualify him for that treatment. But the 2023 Guideline Manual will properly include a conspiracy offense for that purpose, 88 Fed. Reg. at 28,275, and Smith is choosing to operate under the 2023 Manual. U.S.S.G. § 1B1.11(b)(2) (stating the "one book" rule).

But, under the Garland Policy, Smith would not be charged with the penalty-enhancing quantity of "280 grams of crack cocaine." Absent that enhancement, Smith's statutory penalty range would be 0 to 20 years. Accordingly, his career-offender offense level would drop to 32, U.S.S.G. § 4B1.1(b)(3), and his guideline range would drop to 210 to 262 months, or about 17.5 to 22 years.

#### 3. Also giving credit for acceptance of responsibility

Smith did enter a guilty plea, expressly admitting his role in the conspiracy. He withdrew that plea evidently because he had reason to believe he did not qualify as a "career offender" (which made him think the plea bargain was too harsh), and his lawyer failed to give him a well-founded explanation for why that belief was wrong. If the Court were to give him a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, that would reduce his guideline range to 151 to 188 months, or about 12.5 years to 15.5 years.

#### 4. Also varying from the career-offender guideline and applying the Equal Act

The career-offender guideline is widely considered too harsh in a case like Smith's where the predicate prior convictions are low-level, nonviolent drug offenses.[19] Indeed, *most* career-offender are given a sentence below the range due to either a non-substantial-assistance downward departure or a simple downward variance. (Ex. 7, U.S. Sentencing Comm'n, Quick Facts – Career Offenders, at 2 (2022).) The Court could set aside the career-offender guideline and consider his non-career-offender range.

---

[19] U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, at 134 (Nov. 2004) (criticizing the drug-offense-only path to a career-offender sentence for producing excessively harsh sentences). Following up on the *Fifteen Year Report*'s conclusion, the Commission expressly recommended to Congress that the "drug trafficking only pathway" to career-offender status be blocked—*i.e.*, that career-offender status be limited strictly to those offenders with a predicate crime of violence. U.S. Sentencing Commission, *Report to Congress: Career Offender Sentencing Enhancements* at 41-43 (August 2016).

Smith's base offense level for a crime involving 280 to 840 grams of crack cocaine would be 30 (previously it was 32 (PSR at 2)). U.S.S.G. § 2D1.1(c)(5). Even if the Court were to add 2 levels for Smith allegedly being aware that Gentry possessed a gun (an issue that trial counsel did not litigate since it was immaterial), that addition would produce an offense level of 32, which is the same as the career-offender guideline,[20] and so his guideline range would be the same whether or not he is treated as a career offender.

But the DOJ now endorses the Equal Act, which would treat crack cocaine and powder cocaine offenses equally. (Ex. 1, Garland Policy Memo at 5 ("At sentencing, prosecutors should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine."). A powder cocaine offense involving 280 grams triggers an offense level of 18 (whereas that quantity of crack triggers a level of 30). U.S.S.G. § 2D1.1(c)(11). Even adding in 2 levels for Smith allegedly knowing Gentry had a gun, his total offense level would be 20. Reduced by 3 for acceptance of responsibility, his total offense level would be 17, producing a guideline range of 51 to 63 months, or about 4 to 5 years.

Consider one last fact. If the Court were to decline to give Smith a 3-level reduction for acceptance of responsibility, but if it were to consider the impact of equalizing crack and powder cocaine, that would produce a guideline range of 70 to 87 months, or about 6 to 7.5 years.

Thus, the Court can look at the guidance from the Guidelines from perspectives that produce a sentencing recommendation of about 30 years to life, or 17.5 to 22 years, or 12.5 to 14.5 years, or 6 to 7.5 years, or 4 to 5 years. It is most appropriate, however, for the Court to

---

[20] The Court should decline to add 2 levels for a money laundering conviction because that charge was added only when Smith decided to stand trial. (*See* PSR at 12.)

adopt the lowest of these ranges. That range reflects the most current thinking—rooted in statistical and scientific analysis—on sentencing policy. The statutory mandatory minimums should not be triggered for an offender like Smith; the career-offender guideline should not apply to an offender like Smith; and the crack-powder disparity should not be perpetuated against Smith. Correcting for these factors, the Guidelines would reasonably recommend for Smith a sentence of about 5 years, or perhaps 7 years if denied credit for acceptance of responsibility.

Of course, Smith has already served about 12.5 calendar years for this offense, which amounts to an effective sentence of 14.7 years with good-time credits factored in. So there is no reason for him to argue for a sentence as short at 5 or 7 years. Even if the Court were to consider him to fall into the next higher of the proposed ranges (151 to 188 months, or about 12.5 to 15.5 years), the Guidelines would be essentially recommending a sentence of time served.

That recommendation would be appropriate for Smith. Because such a sentence would fall within the guidelines range as reasonably reconstructed by the Court, it would presumptively be long enough to satisfy the goals of federal sentencing, *viz.*, retribution, deterrence, and rehabilitation. *Rita v. United States*, 551 U.S. 338, 348 (2007) ("The upshot is that the sentencing statutes envision both the sentencing judge and the [Sentencing] Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale."). And, indeed, such a sentence would be long enough to do so. As for retribution, Smith's crime involved no violence or threats of violence, and no victims were identified. As for deterrence and rehabilitation, Smith's stellar record during his 12.5 years of incarceration plus the glowing recommendation letters from BOP employees confirm that his sentence has sufficed to put him on the right path, where he is likely to remain since he has now solidly reached middle age. And he has already

served a longer sentence than any codefendant for their conspiracy. For these reasons, it would be appropriate to reduce Smith's sentence to time served.

## Conclusion

Patrick Smith respectfully asks that, after the new § 1B1.13 goes into effect on November 1, 2023, the Court find sufficient reason to reduce his life sentence under 18 U.S.C. § 3582(c)(1), and that the Court reduce that sentence time served or to the term the Court deems appropriate.

Respectfully submitted,

s/ *Michael C. Holley*
MICHAEL C. HOLLEY
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

Counsel for Patrick Smith

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to, Philip H. Wehby and J. Christopher Suedekum, Assistant United States Attorneys, Office of the U.S. Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY